## GRISWOLD v. INTEGON GEN. INS. CORP.

[149 N.C. App. 301 (2002)]

EUGENE A. GRISWOLD, JR., AND EUGENE A. GRISWOLD, JOHN HATCHELL AND KRISTA HATCHELL, A MINOR THROUGH HER GUARDIAN AD LITEM, STEVEN STARNES, BRANNON L. CROWE AND KENNETH CROWE, AND BETTY L. ALLEN, ADMINISTRATRIX OF THE ESTATE OF GEORGE ROBERT ALLEN, DECEASED, PLAINTIFFS v. INTEGON GENERAL INSURANCE CORPORATION, AND NEW SOUTH INSURANCE COMPANY, DEFENDANTS

No. COA01-82

(Filed 19 March 2002)

**1. Insurance— automobile—excess liability coverage—separately insured vehicle—son's negligence**

A policy providing liability coverage for two vehicles owned by the named insureds did not provide excess liability coverage for the negligence of their minor son while he was driving a third vehicle owned by the insureds which was covered by another policy and furnished by the insureds for their son's regular use.

**2. Insurance— automobile—excess liability coverage—family purpose doctrine**

A policy providing liability coverage for two vehicles owned by the named insureds did not provide excess liability coverage to the insureds for the negligence of their minor son while he was driving a third vehicle owned by the insureds and covered by a second liability policy, even if the son's negligence is imputed to them under the family purpose doctrine, because the pertinent policy has an owned vehicle exclusion of liability coverage for the ownership, maintenance or use of any vehicle owned by the insureds other than a covered vehicle.

Judge GREENE concurring in a separate opinion.

Appeal by defendants from order entered 16 November 2000 by Judge Larry G. Ford in Union County Superior Court. Heard in the Court of Appeals 27 November 2001.

*Price Smith Hargett Petho and Anderson, by Wm. Benjamin Smith, for Brannon L. Crowe and Kenneth Crowe plaintiff appellees.*

*Campbell & Taylor, by Clair Campbell and Howard M. Labiner, for Eugene A. Griswold and Eugene A. Griswold, Jr., plaintiff appellees.*

*The Law Offices of William K. Goldfarb, by William K. Goldfarb, for John Hatchell and Krista Hatchell plaintiff appellees.*

*Stott, Hollowell, Palmer & Windham, L.L.P., by James C. Windham, Jr., for defendant appellants.*

McCULLOUGH, Judge.

This appeal from a declaratory judgment entered during the 23 October 2000 Civil Session of Union County Superior Court stems from an automobile accident that occurred on 17 January 1997.

Prior to 17 January 1997, Wesley Cameron Philips lived with his mother, Teresa Helms, and his stepfather, Ted Helms. The family owned three automobiles: a 1992 Chevrolet, a 1995 Honda, and a 1989 Pontiac. Ted and Teresa Helms co-owned all three vehicles, and provided the 1989 Pontiac to Wesley for his use. Ted and Teresa insured all three vehicles through defendants in this case. They purchased two policies at the advice of the insurance agent, because this would apparently make for lower rates. Under the first policy issued by defendant New South, Policy No. PAF 1850535 the Helmses insured the 1992 Chevrolet and the 1995 Honda in the amount of $100,000 for each person and $300,000 per accident. Under a second policy issued by Integon, Policy No. SAN 8757219 they insured the 1989 Pontiac in the amount of $50,000 for each person and $100,000 per accident.

On or about 17 January 1997, Wesley Philips, while driving the 1989 Pontiac provided to him by his parents, collided with another automobile driven by John Bryant Hatchell. The accident resulted in serious personal injuries, including the death of George Robert Allen.

Plaintiffs have alleged in respective pending civil actions that, as a direct and proximate result of the alleged negligence of Wesley, they have sustained injuries and damages in amounts exceeding the policy limits provided by Policy No. SAN 8757219 covering the 1989 Pontiac. Indeed, defendant Integon has tendered the policy limits of $100,000 from the SAN 8757219 policy. Plaintiffs have also alleged the family purpose doctrine as to Ted and Teresa Helms.

It was with these pending civil actions in mind that plaintiffs filed a complaint for declaratory relief on 23 March 2000 making a claim for excess liability insurance coverage under the PAF 1850535 New

South Insurance Policy. Defendants filed their answer on 1 June 2000, denying any such excess coverage under that policy.

Plaintiffs filed for summary judgment in this declaratory judgment action on the excess liability coverage issue on 25 August 2000, asking that the trial court find that the New South Policy provided excess liability coverage in the pending civil actions for both Ted and Teresa and to Wesley as a matter of law. Defendants filed for summary judgment on 12 October 2000, asking that the trial court find that the New South policy provided no such coverage as to either Ted and Teresa or Wesley. The hearing on the matter was before the Honorable Larry G. Ford on 23 October 2000.

The trial court granted in part and denied in part both motions for summary judgment in its order signed on 16 November 2000. As to plaintiffs, the trial court granted summary judgment "to the extent that the policy issued by the Defendants to Teresa and Ted Helms under Policy No. PAF1850535 provides liability insurance coverage to Teresa and Ted Helms as an excess policy in this case . . . ." As to defendants, the trial court granted summary judgment "finding that Policy No. PAF1850535 does not provide any excess liability insurance coverage to Wesley Philips for his negligence, if any, arising out of the accident which is the subject of this lawsuit." The trial court denied plaintiffs' motion as to Wesley and defendants' motion as to Ted and Teresa. It is from this order that defendants appeal.

Defendants make the following assignments of error: (1) that the trial court erred in granting plaintiffs' motion for summary judgment, to the extent that the policy issued by defendants to Ted and Teresa Helms under Policy No. PAF 1850535 provides excess liability insurance coverage to Ted and Teresa Helms in connection with the 17 January 1997 accident; and (2) the trial court erred in denying defendants' motion for summary judgment as it applied to Ted and Teresa Helms.

Plaintiffs make the following cross-assignments of error: (1) the trial court erred in denying plaintiffs' motion for summary judgment as it applied to Wesley Philips; and (2) that the trial court erred in granting defendants' motion for summary judgment with regard to excess liability coverage under Policy No. PAF 1850535 to Wesley Philips for his negligence.

We shall address the order first as to the child Wesley (A), and then as to the parents, Ted and Teresa (B).

I.

Summary judgment is proper when, from materials presented to the court, there exists "no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1999).

"The interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction." *N.C. Farm Bureau Mut. Ins. Co. v. Mizell*, 138 N.C. App. 530, 532, 530 S.E.2d 93, 95, *disc. review denied*, 352 N.C. 590, 544 S.E.2d 783 (2000). Where the language of an insurance policy is clear and unambiguous, "the court's only duty is to determine the legal effect of the language used and to enforce the agreement as written." *Cone Mills Corp. v. Allstate Ins. Co.*, 114 N.C. App. 684, 687, 443 S.E.2d 357, 359 (1994).

The pertinent issues before this Court are whether the policy language contained in Policy No. PAF 1850535 allows for coverage for the injuries arising out of the 17 January 1997 accident.

A.

[1] The trial court held that New South Policy No. PAF 1850535 did not provide excess liability insurance coverage for Wesley Philips' negligence, if any, arising out of the accident. Based on the language of the policy, we agree.

The policy grants the following coverage:

PART A—LIABILITY COVERAGE

INSURING AGREEMENT

We will pay damages for bodily injury or property damage for which any **insured** becomes legally responsible because of an auto accident. . . .

**"Insured"** as used in this Part means:

1. You or any **family member** for the ownership, maintenanance [sic] or use of any auto or trailer.

2. Any person using **your covered auto**.

The policy goes on to list exclusions of coverage. Pertinent on appeal are the following:

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

    1. Any vehicle, other than **your covered auto**, which is:

        a. owned by you; or

        b. furnished for your regular use.

    2. Any vehicle, other than **your covered auto**, which is:

        a. owned by any **family member**; or

        b. furnished for the regular use of any **family member**.

However, this exclusion (B.2.) does not apply to your maintenance or use of any vehicle which is:

        a. owned by a **family member**; or

        b. furnished for the regular use of a **family member**.

It is crucial to the understanding of this insurance policy to remember that it was issued to Ted and Teresa Helms to provide insurance coverage to their two cars, the Chevrolet and the Honda. The Helmses were the "named insured" on the policy, and those two cars were the "covered autos." Wesley was not a named insured. Indeed, Ted and Teresa provided Wesley with his own insurance policy for the 1989 Pontiac. Thus, as the policy points out in its definitions, the "you" and "your" throughout the policy refer to Ted and Teresa, the named insureds, only.

It is with these facts in mind that we review the trial court's ruling. Initially, the policy provides coverage: Wesley is a family member and had used an automobile, thus was an insured. However, the situation fits into the exclusions provisions of "B".

In Exclusion B.1.a., "[a]ny vehicle other than **your covered auto**, which is: a. owned by you[]" is the 1989 Pontiac. Ted and Teresa paid for and co-owned the Pontiac that they provided to Wesley. It is apparent from the record that it is still titled in their name. Thus, the exclusion applies and there is no coverage.

In Exclusion B.2.b., "[a]ny vehicle other than **your covered auto** which is: . . . b. furnished for the regular use of any family member[]" is also the 1989 Pontiac. As said above, the record shows that Ted and Teresa provided Wesley with the Pontiac for his regular use. This

exclusion also applies, and thus the policy affords no coverage for Wesley.

The exception to the exclusion in B.2 refers to "your maintenance or use of any vehicle which is: . . . b. furnished for the regular use of a **family member**." The "your" is a reference to the named insureds, namely Ted and Teresa. Thus, if Ted or Teresa were actually using the 1989 Pontiac, they would be covered by the higher limits of this policy. However, neither Ted nor Teresa was driving the 1989 Pontiac. It is clear that Wesley was the operator of the vehicle. The exception does not include Wesley's use in this context, therefore the exception does not apply.

The trial court was correct in granting summary judgment in favor of defendants on this issue. From the plain meaning of the language of the policy, direct coverage for the negligence of Wesley driving the 1989 Pontiac is excluded.

The trial court was correct in granting defendants' motion and denying plaintiffs' motion, thus plaintiffs' cross-assignment of error is overruled.

## B.

[2] The trial court held that New South Policy No. PAF 1850535 provided liability insurance coverage to Ted and Teresa Helms as an excess policy in this case. Defendants contend that the clear language of the policy excludes such coverage on the facts before this Court. We agree.

To find that the parents of Wesley Philips, Ted and Teresa Helms, have excess coverage from their own automobile insurance policy in this case in which their son is the person alleged to have been negligent implies two things: first, that they can be held liable, and second, that they would be covered, as a matter of law.

As mentioned above, plaintiffs have alleged the family purpose doctrine in pending civil actions against Ted and Teresa Helms. This Court reviewed the family purpose doctrine standard in *Tart v. Martin*, 137 N.C. App. 371, 527 S.E.2d 708, *rev'd on other grounds*, 353 N.C. 252, 540 S.E.2d 332 (2000). Judge Eagles wrote:

> In order to "afford greater protection for the rapidly growing number of motorists in the United States," the family purpose doctrine may be used to *indirectly* hold a vehicle owner liable for the negligent driving of the vehicle by a member of the owner's

household. However, a vehicle owner's liability under the doctrine is limited. In *Taylor v. Brinkman* . . . we held that "the owner or person with ultimate control over the vehicle" may be held liable only if the plaintiff shows that

> (1) the operator was a member of the family or household of the owner or person with control and was living in such person's home; (2) that the vehicle was owned, provided and maintained for the general use, pleasure and convenience of the family; and (3) that the vehicle was being so used with the express or implied consent of the owner or person in control at the time of the accident.

*Martin*, 137 N.C. App. at 373-74, 527 S.E.2d at 710-11 (citations omitted).

Ted and Teresa Helms could be imputed with Wesley's negligence if plaintiffs were to prove the family purpose doctrine at trial. This determination is a question of fact and we do not decide it here. However, it is proper to consider its applicability in this matter on whether the imputed negligence has any bearing on the determination of coverage under the New South Policy No. PAF 1850535. It is clear that if the family purpose doctrine could be proven by plaintiffs at trial, Ted and Teresa Helms could be personally liable.

This is only part of the necessary discussion. It is now that we must consider whether or not Ted and Teresa Helms would be covered by defendant New South Insurance Company Policy No. PAF 1850535 in the event that Wesley's negligence would be imputed to them.

Quoting the same policy from above, the policy provides coverage for "bodily injury or property damage for which any **insured** becomes legally responsible because of an auto accident." Under the family purpose doctrine, Ted and Teresa would be indirectly held liable for the damages caused by Wesley, thus legally responsible for the accident.

The next step is to determine whether any exclusions apply. As discussed above, Exclusion B.1.a denies "Liability Coverage for the ownership, maintenance or use of: 1. Any vehicle, other than **your covered auto**, which is: a. owned by you[.]" Again, the 1989 Pontiac was owned by Ted and Teresa Helms. It was not a covered auto under the New South policy. There is no exception to this exclusion. Thus, it is excluded by the language of the policy.

It is worth noting that such a result is not repugnant to the purpose of the Financial Responsibility Act. New South Policy No. PAF 1850535 is a liability insurance policy. Even though it is being treated as a potential excess liability coverage in this case, it does not lose its identity as liability insurance. In other words, we do not view this policy in the uninsured motorist (UM)/under insured motorist (UIM) context or as providing any UM/UIM coverage.

In *Haight v. Travelers/Aetna Property Casualty Corp.*, 132 N.C. App. 673, 514 S.E.2d 102, *disc. review denied*, 350 N.C. 831, 537 S.E.2d 824 (1999), this Court dealt with the validity of the "family member-owned vehicle" exclusion in a liability insurance policy in light of the Financial Responsibility Act. This exclusion is the same as Exclusion B.2.a. in the New South policy (we do not provide liability coverage for the ownership, maintenance or use of any vehicle, other than your covered auto, which is owned by any family member).

*Haight* said, "In applying the Financial Responsibility Act, our courts have consistently recognized a distinction between UM/UIM and liability insurance. Our Supreme Court has said that while UM/UIM insurance is person-oriented in nature, liability insurance is vehicle-oriented." *Haight*, 132 N.C. App. at 679, 514 S.E.2d at 106; *see Smith v. Nationwide Mut. Ins. Co.*, 328 N.C. 139, 400 S.E.2d 44, *reh'g denied*, 328 N.C. 577, 403 S.E.2d 514 (1991). The basis for the difference of treatment between liability coverage and UM/UIM coverage is the statutory language found in N.C. Gen. Stat. § 20-279.21(b)(3) (1999) pertaining to "persons insured." *See Nationwide Mutual Ins. Co. v. Mabe*, 342 N.C. 482, 495-96, 467 S.E.2d 34, 42 (1996). This language pertains only to UM/UIM coverage, and does not carry over into the liability coverage realm.

With this in mind, the *Haight* Court noted that the exclusion was a vehicle-oriented exclusion "in that it limits liability coverage to personal injury or property damage arising out of the ownership, maintenance or use of the covered vehicle." *Haight*, 132 N.C. App. at 679, 514 S.E.2d at 106. This being so, it saw "no reason to invalidate the exclusion as repugnant to the [Financial Responsibility] Act." *Id.*

In contrast, our Supreme Court dealt with an owned vehicle exclusion similar to Exclusion B.1.a before this Court in the context of UIM coverage in *Mabe*, 342 N.C. 482, 467 S.E.2d 34. The Supreme Court had previously decided that the owned vehicle exclusion in UM motorist coverage was against the public policy of the Financial Responsibility Act in *Bray v. N.C. Farm Bureau Mut. Ins. Co.*, 341

N.C. 678, 462 S.E.2d 650 (1995). The *Mabe* Court, reiterating that UM/UIM coverage follows the person rather than the vehicle, held that an exclusion "which purports to deny UIM coverage to a family member injured while in a family-owned vehicle not listed in the policy" is inconsistent with the legislative intent of the Financial Responsibility Act. *Mabe*, 342 N.C. at 495, 467 S.E.2d at 41.

Exclusion B.1.a in the case *sub judice* is of the *Haight* variety "in that it limits liability coverage to personal injury or property damage arising out of the ownership, maintenance or use of the covered vehicle." It does not deal with UM/UIM coverage. As did the *Haight* Court, we see no reason to invalidate the exclusion.

We find that the exclusion is clear, unambiguous and not contrary to public policy. Therefore, the New South policy provides no coverage to Ted and Teresa Helms even if plaintiffs prove the applicability of the family purpose doctrine and the son's negligence is imputed to the parents. Thus, the trial court erred in granting partial summary judgment to plaintiffs and denying partial summary judgment to defendants and the order is reversed as to those parts.

Affirmed in part, reversed in part.

Judge CAMPBELL concurs.

Judge GREENE concurs in the result with separate opinion.

GREENE, Judge, concurring in the result.

The trial court denied Plaintiffs' motion for summary judgment with regard to insurance coverage by New South Insurance Company (New South) for Wesley Philips' negligence. As Plaintiffs did not appeal from that determination, the correctness of that ruling is not before this Court.[1] Accordingly, I would not address the issue discussed in part A of the majority opinion.

With respect to the order of the trial court that the New South policy provides coverage to Teresa and Ted Helms if they are held liable under the family purpose doctrine, I agree the trial court must be reversed. As noted by the majority, the policy excludes coverage for "the ownership, maintenance or use of . . . [a]ny vehicle, other than your covered auto, which is . . . owned by you." The "covered"

---

1. Plaintiffs did assign error to the denial of their motion for summary judgment, but that is not sufficient to raise the issue on appeal. *See* N.C.R. App. P. 3 (outlining procedure for appealing from judgments and orders).

autos in the New South policy were a 1992 Chevrolet and a 1995 Honda. The 1989 Pontiac operated by Wesley Philips at the time of the accident, although owned by Teresa and Ted Helms, was not a covered auto under the New South policy. Plaintiffs do not argue in their briefs to this Court that the New South policy, as read by this Court, contravenes the purposes of the Financial Responsibility Act and thus must be construed so as to provide coverage. Accordingly, I would not address that issue.